Filed 8/29/22 P. v. Noel CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | C093300 |
| Plaintiff and Respondent, | (Super. Ct. Nos. 19F6039, 20F2719) |
| v. | |
| JUSTIN JOEL NOEL, | |
| Defendant and Appellant. | |

Defendant Justin Joel Noel pled no contest to assault with force likely to cause great bodily injury on J.C. in Shasta County Superior Court case No. 19F6039 and the trial court placed defendant on formal probation. Subsequently, in Shasta County Superior Court case No. 20F2719, a jury found defendant guilty of additional offenses, the trial court revoked probation in case No. 19F6039, and the court sentenced defendant to an aggregate term of four years eight months.

On appeal, defendant asserts: (1) a protective order the court issued in favor of J.C. was statutorily unauthorized; (2) the trial court erred in stating that, upon his release, he will be subject to parole as opposed to postrelease community supervision; (3) an

1

administration fee imposed by the trial court was unauthorized; and (4) the abstract of judgment must be amended to correct several errors. In supplemental briefing he contends the legislative changes to Penal Code section 1170[1] made by Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) and Assembly Bill No. 124 (2021-2022 Reg. Sess.) (Assembly Bill 124) require remand for resentencing.

While we conclude the protective order was statutorily authorized, we remand the matter for the trial court to determine the duration of the order and to issue a written criminal protective order. We also agree that the changes proposed by Senate Bill 567 to section 1170, subdivision (b)(6) also require remand.[2] We agree with defendant's contentions that, upon his release, he shall be placed on postrelease community supervision, not parole, and that the 15 percent administration fee imposed must be stricken. Because we are remanding the matter for resentencing, defendant's contentions concerning errors on the original abstract of judgment are moot. We shall modify the oral pronouncement of judgment, order a minute order corrected, and remand for resentencing.

---

[1] Undesignated statutory references are to the Penal Code.

[2] Assembly Bill 124 is not independently operative. In 2021, three bills proposing changes to section 1170 were enacted by the Legislature and signed by the Governor on the same day: Assembly Bill 124 (Stats. 2021, ch. 695, § 5), Assembly Bill No. 1540 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 719, § 2), and Senate Bill 567 (Stats. 2021, ch. 731, § 1.3). (See *People v. Flores* (2022) 73 Cal.App.5th 1032, 1038; *People v. Banner* (2022) 77 Cal.App.5th 226, 243, fn. 2 (conc. & dis. opn. of Detjen, J.).) Since Senate Bill 567 was the last bill the Governor signed and bears the highest chapter number, its amendments to section 1170 prevail over the amendments to that section specified in the other two bills. (Gov. Code, § 9605, subd. (b); *In re Thierry S.* (1977) 19 Cal.3d 727, 738-739.) However, Senate Bill 567 states that if that bill is enacted last of the three, section 1.3 of the bill incorporating the amendments proposed by Assembly Bill 124 and Assembly Bill No. 1540 shall become operative. (Stats. 2021, ch. 731, § 3.) Therefore, the amendments to section 1170, subdivision (b)(6) that defendant contends were made by Assembly Bill 124 became operative only through Senate Bill 567.

## FACTUAL AND PROCEDURAL BACKGROUND[3]

*Case No. 19F6039*

"On 9/24/19, Redding Police Department (RPD) Officers responded to a call regarding a disturbance between and [*sic*] male and female. When they arrived, officers contacted the victim, identified as J.C. . . . , at the Shasta County Social Security Building, who was reporting the disturbance.

"The victim stated she and the defendant, Justin Joel Noel, had been in a dating/sexual relationship for approximately 3 months and have been staying together while homeless. She reported there has been past domestic abuse and defendant refuses to let the relationship end.

"The victim advised that over the course of the morning she attempted to sleep while the defendant poked her, rambled, and behaved in a manner that prevented her from sleeping. This encounter eventually led to the defendant accusing the victim of being in another relationship. The defendant then 'pounced' on the victim, placed his hands around her neck, and began squeezing her neck with his thumbs. The defendant strangled the victim for approximately 4-5 seconds during which she could not breathe. The victim reportedly did not lose consciousness; however, advised she had subsequent neck pain from being strangled. The victim further reported after the defendant released his grasp from her neck, he placed his hands around her face and used his thumbs to 'gouge' both of her eyes, which resulted in pain. The victim could not recall how long the defendant 'gouged' her eyes. The victim advised, the defendant subsequently released her, picked up a pile of dirt, and threw it in her face. The victim reported that she did not struggle during the assault as she feared it would make things worse. [¶] . . . [¶]

---

**3** As do both parties, we derive the relevant underlying facts from the probation report.

"The victim was checked by RPD Officers who found no visible signs of injury anywhere. She was told to inform officers if bruising later develops. The victim informed officers that she would like the defendant arrested for the assault.

"The defendant was then questioned about the alleged assault that took place. The defendant stated that he and the victim argued about their relationship and infidelity, but denied any physical abuse. When asked if the victim requested the defendant leave her along, [*sic*] the defendant stated, 'She didn't mean it, she wanted me with her.' The defendant was then placed under arrest."

Defendant was charged with assault with force likely to cause great bodily injury (§ 245, subd. (a)(4); count 1). It was further alleged defendant had served a prior prison term within the meaning of section 667.5, former subdivision (b). Defendant pled no contest to count 1. The prosecution agreed to the dismissal of the prior prison term enhancement allegation.

On November 12, 2019, the trial court suspended imposition of sentence and placed defendant on formal probation. During sentencing, defense counsel objected to certain recommended probation conditions on the ground that "they are adding domestic violence terms and conditions, and so he would be objecting to those." The trial court responded, "Okay. That's an appropriate objection," and struck the probation condition that defendant complete a batterer's program. The court also struck a domestic violence fine. (§ 1203.097, subd. (a)(5).) The court ordered defendant not to have any contact with J.C. The court concluded the proceedings by stating: "I don't know where they got the impression it was a domestic violence case."

*Case No. 20F2719*

The underlying facts pertaining to case No. 20F2719 are not relevant to any issue presented on appeal, and, accordingly, we do not summarize them in detail here. Briefly, on April 24, 2020, a Shasta County deputy sheriff stopped defendant, who was driving M.C.'s car, which had been stolen from where M.C. had parked it. On May 1, 2020,

4

defendant entered A.S.'s car and drove off. Police pursued defendant as he drove A.S.'s car. Eventually, defendant stopped the car, got out, and was apprehended by law enforcement after repeatedly failing to follow law enforcement commands.

On May 4, 2020, the prosecution filed a petition for revocation of probation in case No. 19F6039, alleging defendant had committed several new offenses. On the same date, defendant was charged in case No. 20F2719 with carjacking (victim A.S.) (§ 215; count 1), resisting, delaying, or obstructing a public officer, peace officer, or emergency medical technician (§ 148, subd. (a)(1); count 2), and evading a peace officer (Veh. Code, § 2800.1; count 3). It was further alleged defendant personally used a deadly or dangerous weapon, a knife, in the commission of count 1. (§ 12022, subd. (b).) On August 31, 2020, the prosecution filed a first consolidated complaint, additionally charging defendant with unlawful driving or taking of a vehicle (victim M.C.) (Veh. Code, § 10851, subd. (a); count 4) and receiving a stolen motor vehicle (victim M.C.) (§ 496d, subd. (a); count 5).

During trial, the court granted defendant's motion to dismiss count 1, carjacking (§ 215), and the use of a deadly or dangerous weapon enhancement allegation (§ 12022, subd. (b)). The jury found defendant guilty on counts 2 through 4.[4] The trial court sustained probation revocation petitions in case No. 19F6039.

*Sentencing*

On December 18, 2020, the trial court sentenced defendant to an aggregate term of four years eight months in state prison, calculated as follows: the upper term of four years on count 1 in case No. 19F6039, assault with force likely to cause great bodily injury (§ 245, subd. (a)(4)), and, in case No. 20F2719, a consecutive term of eight months on count 4, unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), and

---

[4] Counts 4 and 5 were presented as alternative counts. Accordingly, the jury reached no verdict on count 5.

5

concurrent terms of 180 days each on count 2, resisting, delaying, or obstructing a public officer, peace officer, or emergency medical technician (§ 148, subd. (a)(1)), and count 3, evading a peace officer (Veh. Code, § 2800.1).

# DISCUSSION

## I

### *The Protective Order*

In sentencing defendant on December 18, 2020, the trial court stated: "Defendant is ordered to neither knowingly attempt nor have any contact in any manner with, nor be in the presence of, J.C., . . . , also as previously imposed in Case Number 19F6039." Defendant asserts this no-contact order is unauthorized and must be stricken. According to defendant, while the trial court may have had the authority under section 1203.1 to issue the order protecting J.C. as a probation condition on November 12, 2019, it lacked any statutory authority to impose the order in imposing a prison sentence on December 18, 2020. Defendant maintains that none of the statutory bases authorizing a criminal protective order identified on Judicial Council form CR-160 (form CR-160), the mandatory form for criminal protective orders, has any application here.

The Attorney General asserts defendant forfeited his contention by failing to object in the trial court. However, as stated in *People v. Ponce* (2009) 173 Cal.App.4th 378: "As a general rule, an appellant waives issues on appeal that he or she did not initially raise in the trial court. [Citation.] But there are exceptions to this rule for unauthorized sentences and sentencing decisions that are in excess of the trial court's jurisdiction." (*Id.* at p. 381.) "Because this case involves the jurisdictional validity of the trial court's decision to issue a . . . protective order during sentencing, we will consider [the defendant's] claim on the merits." (*Id.* at pp. 381-382.) We take the same approach and consider defendant's claim on the merits.

As defendant notes, the trial court did not indicate the statutory basis for the protective order. Nor is there a written criminal protective order in the record.

6

"Several statutes permit entry of a protective order under certain circumstances in a criminal case." (*People v. Robertson* (2012) 208 Cal.App.4th 965, 996.) Generally, the trial court's failure to identify the correct statutory basis for its protective order does not necessarily mandate reversal. " ' "[A] ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason. If right upon any theory of the law applicable to the case, it must be sustained regardless of the considerations which may have moved the trial court to its conclusion." ' " (*People v. Zapien* (1993) 4 Cal.4th 929, 976.)

Defendant identifies the statutory authority appearing on form CR-160 and argues that the protective order was not authorized under any of the listed statutes. The Attorney General responds that the order was authorized under section 136.2, subdivision (i)(1). We proceed directly to consideration of that statutory provision.

Section 136.2, subdivision (i)(1) provides, in pertinent part: "When a criminal defendant has been convicted of a crime involving domestic violence as defined in Section 13700 or in Section 6211 of the Family Code, . . . the court, at the time of sentencing, shall consider issuing an order restraining the defendant from any contact with a victim of the crime."

Subdivision (b) of section 13700 provides, in part: " 'Domestic violence' means abuse committed against an adult or a minor who is a spouse, former spouse, cohabitant, former cohabitant, *or person with whom the suspect* has had a child or *is having or has had a dating or engagement relationship*." (Italics added.) Family Code section 6211 similarly states that " 'Domestic violence' is abuse perpetrated against" specified categories of individuals, including persons "with whom the respondent is having or has had a dating or engagement relationship." (Fam. Code, § 6211, subd. (c).)

Here, defendant and J.C. had been in a dating/sexual relationship for approximately three months, and had been staying together while homeless. Thus, J.C. was a person with whom defendant had a dating relationship so as to potentially qualify

7

as a victim of domestic violence within the meaning of subdivision (b) of section 13700 and subdivision (c) of Family Code section 6211. (See § 13700, subd. (d) [" 'Victim' means a person who is a victim of domestic violence"].)

Subdivision (a) of section 13700 defines "abuse" as "intentionally or recklessly causing or attempting to cause bodily injury, or placing another person in reasonable apprehension of imminent serious bodily injury to himself or herself, or another."

Family Code section 6203 provides: "(a) For purposes of this act, 'abuse' means any of the following: [¶] (1) To intentionally or recklessly cause or attempt to cause bodily injury. [¶] (2) Sexual assault. [¶] (3) To place a person in reasonable apprehension of imminent serious bodily injury to that person or to another. [¶] (4) To engage in any behavior that has been or could be enjoined pursuant to [Family Code] Section 6320.[5] [¶] (b) Abuse is not limited to the actual infliction of physical injury or assault."

In *People v. Therman* (2015) 236 Cal.App.4th 1276, the defendant asserted the trial court lacked the authority to impose a no-contact order. (*Id*. at p. 1278.) Another panel of this court considered whether the order was authorized under section 136.2, subdivision (i). (*Therman*, at pp. 1278-1279.) The defendant had been convicted of felony false imprisonment of his spouse. (*Id*. at p. 1279.) Because the defendant's spouse was within the class of persons protected under section 13700, the *Therman* court had to decide whether the "defendant's false imprisonment conviction involved 'abuse' within the meaning of section 13700." (*Therman*, at p. 1279.) The court noted that, "[d]uring the change of plea hearing, the prosecutor stated that defendant 'did, with force and/or violence, force [his spouse] to stay somewhere without her consent.' " (*Ibid*.) The

---

[5] Behavior that could be enjoined pursuant to Family Code section 6320 includes, among other things, attacking, striking, threatening, battering, harassing, and disturbing the peace of the other party. (Fam. Code, § 6320, subd. (a).)

court concluded: "[T]he factual basis for the plea establishes that defendant unlawfully restrained his spouse using force and/or violence. On this admittedly sparse record, the trial court could reasonably conclude that defendant intentionally or recklessly caused or attempted to cause his spouse bodily injury, or placed her in reasonable apprehension of imminent serious bodily injury to herself. [Citation.] We therefore conclude that the record supports an implied finding that defendant committed 'abuse' against his spouse within the meaning of section 13700, and therefore committed a crime of domestic violence such that the protective order was authorized by section 136.2, subdivision (i)." (*Ibid*.)

The Attorney General asserts that, like in *Therman*, the record here "supports an implied finding [defendant] committed 'abuse' against J.C., a person with whom he had a dating relationship and cohabitated."

We have concluded J.C. was in the protected class of persons. As for the presence of abuse, after defendant accused J.C. of being in another relationship, he pounced on her, "placed his hands around her neck, and began squeezing her neck with his thumbs. The defendant strangled the victim for approximately 4-5 seconds during which she could not breathe. . . . The victim further reported after the defendant released his grasp from her neck, he placed his hands around her face and used his thumbs to 'gouge' both of her eyes, which resulted in pain. . . . The . . . defendant subsequently released her, picked up a pile of dirt, and threw it in her face."

We agree with the Attorney General that the record supports an implied finding defendant committed "abuse" against J.C. within the meaning of section 13700 and Family Code section 6203. This record is sufficient to support the finding that defendant intentionally or recklessly caused, or attempted to cause, bodily injury, or placed J.C. in reasonable apprehension of imminent serious bodily injury. (§ 13700, subd. (a); see also

9

Fam. Code, § 6203, subd. (a)(1), (3), (4).)  We thus conclude the trial court had the authority to issue the protective order under section 136.2, subdivision (i)(1).**6**

In his opening brief, defendant raises the fact that, in granting probation in November 2019, the trial court sustained defense counsel's objection to requirements that defendant pay a domestic violence fine and participate in a batterer's program.  The court concluded those proceedings by stating: "I don't know where they got the impression it was a domestic violence case."  Defendant asserts in his opening brief that the court "found explicitly that this was not a domestic violence case . . . ."  In his reply brief, defendant adds that the "trial court's finding that this was not a domestic violence case was res judicata."

Generally, we do not consider points raised for the first time in a reply brief absent a showing of good cause for failure to present them earlier.  (*Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 630, fn. 9; *Allen v. City of Sacramento* (2015) 234 Cal.App.4th 41, 52.)  Defendant did not explicitly raise his "res judicata" argument until his reply brief on appeal.  While he argued in his opening brief that the trial court "found explicitly that this was not a domestic violence case," and thus that section 136.2, subdivision (i)(1) did not provide a statutory basis for the protective order, he did not raise res judicata.  Defendant has offered no reason for his failure to present this argument earlier.  We thus find the issue is forfeited.

Although we conclude the order was statutorily authorized, the trial court failed to specify any duration.  A protective order under section 136.2, subdivision (i)(1) "may be valid for up to 10 years, as determined by the court. . . .  It is the intent of the Legislature in enacting this subdivision that the duration of a restraining order issued by the court be based upon the seriousness of the facts before the court, the probability of future

---

**6** In light of this conclusion, we need not address the other statutory authority discussed by defendant in his opening brief.

violations, and the safety of a victim and the victim's immediate family." (§ 136.2, subd. (i)(1).) In the absence of a specified duration, or the grounds supporting a chosen duration, we must remand the matter for the trial court to determine the appropriate length of the protective order pursuant to the factors set forth in section 136.2, subdivision (i)(1).

## II

### *Postrelease Community Supervision*

Defendant asserts the trial court erred in stating he will be placed on parole upon his release. Defendant asserts that, based on his convictions, the trial court should have ordered that he will be placed on postrelease community supervision, not parole, and that the minute order should be corrected accordingly.

The Postrelease Community Supervision Act of 2011 (Stats. 2011, ch. 15, § 479) created postrelease community supervision as an alternative to parole for nonserious, nonviolent felonies. (*People v. Bryant* (2021) 11 Cal.5th 976, 982.) " ' " 'Parole applies to high-level offenders, i.e., third strikers, high-risk sex offenders, and persons imprisoned for serious or violent felonies or who have a severe mental disorder and committed specified crimes.' " ' " (*People v. Ruiz* (2020) 59 Cal.App.5th 372, 378, citing § 3451, subd. (b).) " ' " 'All other released persons are placed on [postrelease community supervision].' " ' " (*Ruiz*, at p. 378, citing § 3451, subd. (a).)

As the Attorney General correctly concedes, neither defendant's current convictions nor his criminal history renders him ineligible for postrelease community supervision. (See § 3451, subds. (a), (b).) Accordingly, we shall order the oral pronouncement of judgment modified and the trial court's December 18, 2020 minute order corrected to reflect that, upon his release, defendant shall be placed on postrelease community supervision, not parole.

## III

### *Sentencing*

*Senate Bill 567*

At the sentencing hearing held on December 18, 2020, the trial court selected the upper term of four years on count 1, the conviction for a felony violation of section 245, subdivision (a)(4), as the principal term. In selecting the upper term, the trial court found that aggravating factors related to the crime outweighed the mitigating factors. At the sentencing hearing, defense counsel urged the court to consider, among other factors, defendant's mental condition at the time of the crime, and argued that defendant's drug addiction and homelessness, "completely derailed [his life]." Additionally, the presentence report prepared by the probation department for the sentencing hearing included an entry that defendant had reported diagnoses of depression, anxiety, and bipolar disorder, and that defendant believed he suffered from undiagnosed posttraumatic stress disorder. The trial court did not address defense counsel's comments or the information of defendant's mental health when imposing sentence.

Defendant contends that the amendments made by Senate Bill 567 to section 1170, including subdivision (b)(6), constitute ameliorative legislation that applies retroactively to cases such as his still pending on appeal and requires this court to vacate his sentence and remand to the trial court for resentencing.

As amended, section 1170, subdivision (b)(6) provides in relevant part: "[U]nless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] (A) The person has experienced psychological, physical, or childhood trauma, including, but not limited to, abuse, neglect, exploitation or sexual violence."

The Attorney General concedes these amendments are retroactive and apply to defendant's nonfinal case pending on appeal. We accept the Attorney General's concession. (See *People v. Flores* (2022) 75 Cal.App.5th 495, 500; *People v. Flores, supra*, 73 Cal.App.5th at p. 1039.) The Attorney General argues however, that the record reflects that the trial court would have reached the same sentence even under the amended law, and thus contends that remand is unnecessary because any error in the trial court's imposition of the upper term, was harmless. We are not convinced.

The trial court did not have the benefit of section 1170, subdivision (b)(6) at the time of defendant's sentencing hearing and, as such, did not conduct the analysis required of that section. In fact, the record is silent as to the trial court's consideration of defendant's mental health diagnoses and life circumstances. We need not decide whether these circumstances amount to the "trauma" intended in the newly amended statute; when the trial court imposed sentence, defendant was not entitled to a presumptive lower term upon a showing that mental illness resulted in psychological trauma, which was a "contributing factor in the commission" of his offenses. (§ 1170, subd. (b)(6).) Defendant thus had less incentive to develop a record regarding these issues. By the same token, the trial court had less incentive to assess whether psychological trauma was a contributing factor. (See *People v Banner, supra*, 77 Cal.App.5th at p. 242 ["record is likely incomplete relative to statutory factors enacted after judgment [is] pronounced"], citing *People v. Frahs* (2020) 9 Cal.5th 618, 637-638.) When a sentencing court is unaware of the scope of its discretionary powers, "the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) The record before us does not make it clear that the trial court would have imposed the upper term had section 1170, subdivision (b)(6) been in effect at the time. (*Banner*, at p. 242.)

13

On remand, defendant, as well as the Attorney General, will have the opportunity to present additional evidence and information to permit the trial court to make the necessary findings and exercise the discretion afforded by section 1170, subdivision (b).

*Administration Fee*

In sentencing defendant, the trial court ordered victim restitution "subject to a 15 percent administration fee . . . ." The trial court did not articulate a statutory basis for the fee. Defendant asserts, and the Attorney General agrees, that this fee is unauthorized and must be stricken.

As defendant notes, former subdivision (*l*) of section 1203.1 authorized the imposition of a 15 percent administration fee that applied only when a defendant had been ordered to pay restitution as a condition of probation. Defendant was not placed on probation, and, thus, section 1203.1, former subdivision (*l*) did not apply.

"When a defendant is denied probation, section 1202.4, subdivision (f) . . . provides for restitution paid directly to the victim and subdivision (e) provides for restitution payable to a state fund." (*People v. Carbajal* (1995) 10 Cal.4th 1114, 1121, fn. 6.) Former subdivision (*l*) of section 1202.4 authorized "a fee to cover the actual administrative cost of collecting the restitution fine, not to exceed 10 percent of the amount ordered to be paid, to be added to the restitution fine and included in the order of the court . . . ." (§ 1202.4, former subd. (*l*).) However, this could not serve as the statutory basis for the 15 percent administration fee here because (1) former subdivision (*l*) of section 1202.4 specified the administrative fee pursuant to that section was not to exceed 10 percent, and (2) the trial court *also* separately imposed a 10 percent administrative fee pursuant to section 1202.4.

Because it appears that there is no statutory basis for the 15 percent administration fee, it was unauthorized and we shall order it stricken.

14

*Abstract of Judgment*

In light of the fact that we are remanding the matter for resentencing, defendant's contentions concerning errors on the original abstract of judgment are moot.

## DISPOSITION

The trial court's December 18, 2020 minute order is ordered corrected to reflect that, upon his release from prison, defendant shall be placed on postrelease community supervision, not parole. The oral pronouncement of judgment is modified to reflect that, upon his release, defendant will be subject to postrelease community supervision, and to strike the 15 percent administration fee imposed in connection with victim restitution. The matter is remanded to the trial court to determine the duration of the protective order based on the factors set forth in section 136.2, subdivision (i)(1), for the trial court to issue a written criminal protective order (form CR-160), and to resentence defendant consistent with section 1170, subdivision (b). Upon conclusion of the resentencing hearing, consistent with the new sentence and this opinion, the trial court shall prepare an amended abstract of judgment and forward the amended abstract to the Department of Corrections and Rehabilitation. The judgment is otherwise affirmed.


_____/s/_____
EARL, J.


We concur:


_____/s/_____
HOCH, Acting P. J.


_____/s/_____
KRAUSE, J.

15